**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| WENDY DE LA TORRE, | § | CIVIL ACTION NO. |
| | § | |
| Plaintiff | § | |
| v. | § | |
| | § | |
| MICA CORPORATION, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant | § | |

**ORIGINAL COMPLAINT**

COMES NOW, WENDY DE LA TORRE, Plaintiff, and files this Complaint against MICA CORPORATION, Defendant, and in support thereof would respectfully show this Court the following:

**I. NATURE OF THE CLAIM**

1. Plaintiff seeks relief through her causes of action on the basis of discrimination against her in her employment with Defendant, on the basis of her disability, in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*., as amended ("Title I"). Title I prohibits discrimination in the workplace based upon an employee's disability. Plaintiff has cancer, which is a disability under Title I. Plaintiff also seeks relief for discrimination on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended ("Title VII"). Title VII prohibits discrimination in the workplace based upon an employee's race. Plaintiff is a Puerto Rican Black Latino ("Black") employee who was the victim of Defendant's racially discriminatory employment policies and practices.

2. Plaintiff also brings claims for violations of 42 U.S.C § 1981 resulting in her unlawful termination. The Plaintiff, a qualified employee, was terminated based upon her race. Plaintiff's termination was a violation of 42 U.S.C. § 1981 as her race as a Black/Hispanic was a motivating factor in Defendants' decision to terminate her employment. Her termination was due to disparate impact and treatment caused by Defendant's racially discriminatory practices and because of the Plaintiff's Black/Hispanic race.

3. Plaintiff would further show that Defendant acted intentionally, maliciously and/or with reckless indifference to the state-protected rights of Plaintiff in discharging her, discriminating against her, and subjecting her to harassment, which as a result entitles her to recover exemplary and/or punitive damages. Plaintiff believes that exemplary and/or punitive damages in the sum of $250,000.00 would be sufficient to prevent this type of conduct in the future by Defendant and to set an example to others contemplating such conduct.

4.     Plaintiff was harmed due to Defendant's discriminatory conduct and seeks any and all available relief, including declaratory, equitable, compensatory and punitive remedies, as well as statutory attorney's fees and costs.

## II. JURISDICTION AND VENUE

5.     The jurisdiction of the Court is proper because Plaintiff seeks relief pursuant to 28 U.S.C. Sections 1343(3) and 1343(4), which confers original jurisdiction upon this court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under 42 U.S.C. Section 1981; (iii) under 42 U.S.C. Sections 2000e, et. seq.; (iv) and under 42 U.S.C. Sections 2002, et. seq.

6.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the Defendant has offices, conducts business, and can be found in the Northern District of Texas, and all acts and omissions complained of herein occurred in whole or in part in the Northern District of Texas.

## III. PARTIES

7.     Plaintiff, WENDY DE LA TORRE is a Puerto Rican Black Latino female who resides in the Northern District of Texas. She was an employee of the Defendant MICA Corporation located in Fort Worth, Texas.

8.     Defendant, MICA CORPORATION is a corporation registered to do business in the State of Texas. Defendant does business in the Northern District of Texas and can be served through its registered agent, L.C. Tubb, Jr. located at 5750 North Riverside Drive, Fort Worth, Texas 76137.

## IV. PROCEDURAL REQUIREMENTS

9.     All paragraphs above are incorporated herein by reference.

10.    Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") whereby an investigation ensued. Thereafter, the EEOC mailed Plaintiff her Right to Sue letter on or about February 22, 2019 entitling her to institute a civil action in the appropriate forum within ninety (90) days of the date of receipt of said notice. This action was initiated within the said ninety (90) days. Plaintiff has timely and properly exhausted his administrative remedies.

## V. STATEMENT OF FACTS

11.    Wendy is a Puerto Rican Black Latino who began working at MICA on December 10, 2018 as the Human Resources Director. She was the first Black Latino and first woman given a director position at MICA.

12.    The posting for the position requested that applicants be bilingual in English and Spanish, and Wendy possessed all the qualifications for the job. The company does specialty construction for highways in Texas, and many of the workers speak Spanish. Wendy's job required her to travel

to locations around the metroplex as well as San Antonio and Houston each month for safety meetings and investigations of HR issues.

13.     When Wendy interviewed for the position, Joel Flint, Executive Vice President and Kevin Tubb, President, told her that CEO LC Tubbs, "uses colorful language and is "old fashioned." She asked them to be more specific, but they would not provide any examples.

**Racial Discrimination**

14.     When Wendy was hired and introduced to LC by Joel and Kevin, LC asked, "This is the best you could come up with?"

15.     Wendy soon found out that LC was outright racist. Examples of LC's racism include the following:

       a. In reference to jewelry Wendy was wearing, LC said, "Typical black. She's shiny."
       b. LC told Wendy that her accent was strong.
       c. LC told Wendy that her skin color is different.
       d. LC told Wendy that her hair looked unkempt when it was in its natural state.
       e. LC told Wendy that her clothing was too bright and ethnic, and she needed to wear muted colors.
       f. LC told Wendy, "Your people can't be trusted."
       g. LC told Wendy, "You people are hard workers outside, but not inside."
       h. Wendy was speaking Spanish to another worker and LC said to her, "This is an English country."

16.     Wendy spoke several times to Joel and Kevin about LC's racism. They both said they know he is racist, but she should remember that he was leaving the company. Apparently, LC was supposed to retire, but he did not retire while Wendy worked there.

17.     On numerous occasions, Joel and Kevin said they would protect Wendy from LC by acting as a go-between. They asked Wendy not to even approach LC because he would likely say something offensive. They knew LC would respond to them better than he would respond to her when she needed to address HR problems within the company. Joel also said that he wanted someone to file an EEOC claim against LC and the company so LC could "finally learn his lesson."

**Disparate Treatment and a Set-Up for a Write-Up**

18.     Wendy was the first Black Latino female hired as a director. Two months after she was hired, a position was created for Renee Nation, a white female. Renee was promoted to the position of Controller and Vice President which put her above Wendy's position as Director of Human Resources.

19.     LC takes everyone who is a department head on a fishing trip to Alaska or Canada and a hunting trip to Utah. Wendy was the head of the HR department, but she was not invited on any

of the trips. All department heads left for a week-long fishing trip to Alaska or Canada in June 2019, and Wendy was the only department head who was not invited on the trip.

20. In June 2019, LC came into her office and put a paper in front of Wendy and said, "You need to follow this dress code." The dress code was from 2003 and included a provision that women could not wear crop pants that were over six inches from the bottom of their heel. LC said this was presented to her because someone had seen her wearing crop pants that were too short. Wendy explained that she did not sign a handbook that included this dress code provision. She showed LC the current dress code and explained that other women wore crop pants regularly. LC said they could wear crop pants, but Wendy could not.

21. In April 2019, Wendy informed Kevin and Joel of a complaint and proceeding to investigate based on standard procedure. The next day, LC called her into his office and told her that Linda Mortimer, a while female, would take the lead on the investigation.

22. Linda Mortimer had the title of EEO officer, but she never did any work required of the position. Wendy did all of the work of an EEO officer as a part of her duties HR Director. When LC called Wendy into his office, Joel, Kevin and Linda were also present. Wendy looked at Joel and Kevin while LC was talking, and Joel put his fingers to his lips indicating that Wendy should not say anything.

23. After the meeting with LC, Joel and Kevin read the information Wendy had already collected, including information she had gotten from Mike Nation, the safety manager. Joel and Kevin told Wendy to call Mike and tell him that when Linda called him, he should pretend it was the first time dealing with the issue. Wendy was reluctant to call the safety manager, Mike, but Joel and Kevin insisted that she call, so she did.

24. Wendy called Mike as instructed and put him on speaker while Joel and Kevin were in the room. She told Mike that Linda was taking the lead on the investigation and that when Linda called him, he was to take the information as if he was first hearing about it from Linda.

25. Immediately after that call, Mike called LC and told him that Wendy told him to lie. Joel then got a call from LC. After the call, Joel said, "poop just hit the fan."

26. The next day, Joel and Kevin talked to Mike and explained that they instructed Wendy to call Mike because they were trying to protect Wendy from LC and Linda. Joel and Kevin informed Wendy about their meeting with Mike and the information they shared with him. Furthermore, Mike later confirmed his meeting with Joel and Kevin.

27. On the same day, Joel and Kevin had a meeting with LC. After that meeting, Wendy was called into LC's office. LC told Wendy she was being written up because she asked Mike Nation to lie for her. Wendy explained that she was only following orders from Joel and Kevin. LC responded, "Don't bring my sons into this!"

28. LC told Wendy he was writing her up and if she did not sign the write up, she would be fired. Wendy signed the write up in order to keep her job.

**Disability Discrimination**

29.     When Wendy was hired, her offer letter included a two-week vacation and a 10% annual bonus.

30.     In May 2019, Wendy had requested and gotten approved vacation days for June 18 through June 21, 2019 for a trip to Mexico City. Unfortunately, on June 10, 2019, Wendy had some tests done and a lump was found. The doctor asked her to cancel her trip to address possible cancer.

31.     The doctor did a biopsy during Wendy's vacation days and the results came back positive for cancer in her throat. When Wendy returned from vacation on June 24, 2019, she informed Joel and Kevin about the diagnosis. She also informed them that she did not go to Mexico as planned and requested the use of more vacation days for surgery to remove the lump and for the start of radiation after surgery.

32.     Joel and Kevin responded that they lost her offer letter so they could not honor her two-weeks of vacation. Perplexed, Wendy asked to see her file so she could find the letter. They said they were looking for it. Wendy also explained that she had a copy of the letter at home, but they said she might have changed it so they could not use her copy of the letter.

33.     Wendy explained that she would not have taken any job that did not provide vacation time. Wendy further requested time off to address her medical needs and the response from Joel and LC was, "We're going to say no."

34.     Wendy informed them that because of the urgency of her medical emergency, she would still have the procedure, even if the time off was not paid. (The company did not offer sick time or paid time off but offered three personal days after a year of employment. Wendy had not been working long enough to get the three days personal leave.)

35.     On August 5, 2019, Wendy went to the hospital at 4:00 a.m. for the procedure. Her doctor said she could go to work later that day if she did not talk. Joel had assigned her to update the employee handbook. Her deadline to complete the project was the beginning of October. Wendy planned to work on the handbook that day because she do so without talking.

36.     Wendy got to work at 10:45 a.m. on August 5, 2019. At 11:30 a.m., LC walked into her office and told her she was fired. Wendy asked him where this was coming from, and LC pointed at his throat, which was the area where Wendy's lump was found, and said, "It's coming from here."

37.     LC said he would give Wendy two-week's pay as severance so she would "disappear from his face."

38.     Wendy was discriminated against because of her race (Puerto Rican/Black Latino) in violation of Title VII of the Civil Rights Act of 1964 as amended in that she was the first Latino

Black Female hired into a management level position and was treated differently and harassed by LC Tubbs. She was also the only person in management that was not given two weeks of vacation.

39.     Wendy was also discriminated against based on her disability, and/or because she was regarded as disabled, in violation of the Americans with Disabilities Act Amendments Act of 2008, in that the terms and conditions of her employment were changed immediately after she informed the her supervisor of her disability, and she was terminated immediately following a medical procedure.

40.     As a result of Defendant's acts or omissions, Plaintiff has been damaged in that she has lost wages and fringe benefits in the past and will, in reasonable probability suffer a loss of future earnings and benefits. Plaintiff has also suffered mental anguish in the past and will, in reasonable probability, suffer mental anguish in the future.

41.     At the least, these factors comprise a mixture of motives such that Defendants are liable under either or both legal theories. Accordingly, Plaintiff brings the following causes of action:

## VI. COUNT ONE
### [Retaliation in Violation of Title VII]

42.     For her First Cause of Action, Plaintiff hereby adopts the allegations contained in all paragraphs above as if fully stated herein.

43.     Defendant and/or its agents unlawfully retaliated against Plaintiff, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended.

44.     Defendant's allegation that Plaintiff was terminated due to her performance was mere pretext for unlawful retaliation whereby Plaintiff's race was a motivating factor.

45.     All of the above stated incidents were known to Defendant. However, no actions were taken to protect Plaintiff from future harassment or retaliation, therefore the same continued until she was terminated.

46.     Defendants' actions were intentional, willful and in reckless disregard of Plaintiffs rights as protected by the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended.

47.     Defendant discriminated against Plaintiff because of her race in violation of Title VII, and the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. Sections 2000e, et. seq., by making employment decisions based on race, and by denying plaintiff equal terms and conditions of employment.

48.     As a direct and proximate cause of Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered harm and is entitled to damages. Accordingly, Plaintiff is entitled to all remedies to which a prevailing plaintiff is entitled for violations of Title VII, including without limitation, back pay, compensatory damages, punitive damages, costs and reasonable attorney's fees against Defendant for such unlawful conduct.

## VII. COUNT TWO
## [Violation of 42 U.S.C. § 12101]

49.     For her Second Cause of Action, Plaintiff hereby adopts the allegations contained in all paragraphs above as if fully restated herein, and further alleges and states:

50.     Plaintiff was diagnosed with cancer.

51.     Cancer is a disability within the definition provided under 42 U.S.C. 12102. It is a physical impairment which substantially limited Plaintiff.s major life activities.

52.     42 U.S.C. 12112 provides: "No covered entity shall discriminate against a qualified individual **on the basis of disability** in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

53.     Defendant did not attempt to make reasonable accommodations for Plaintiff's disability.

54.     Instead, Defendants terminated Plaintiff's employment based upon her cancer diagnosis.

## VIII. COUNT THREE
## [Violation of 42 USC §1981]

55.     For her Third Cause of Action, Plaintiff hereby adopts the allegations contained in all paragraphs above as if fully restated herein, and further alleges and states:

56.     42 U.S.C. § 1981 provides that " [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence. and to the full and equal benefit of all laws and proceedings for the security or persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind. and to no other."

57.     Plaintiff's termination was a violation of 42 U.S.C. § 1981 as her race of Black/African American and/or her disability was a motivating factor in Defendant's decision to terminate her employment.

58.     Defendant's acts of terminating Plaintiff were intentional.

59.     Defendant's decision to terminate Plaintiff's employment was motivated by Plaintiff's race and/or disability even though other factors may have also motivated Defendants.

60.     Due to Defendants' unlawful acts and conduct, Plaintiff has suffered harm and is entitled to damages. Accordingly, Plaintiff is entitled to all remedies to which a prevailing plaintiff is entitled for violations of 42 U.S.C. § 1981, including without limitation, back pay, compensatory damages, punitive damages, costs and a reasonable attorney's fee against Defendants for such unlawful conduct.

## XI. COUNT FOUR
### [Intentional Infliction of Emotional Distress]

61.     Plaintiff hereby adopts the allegations contained in all paragraphs above as if fully restated herein

62.     Plaintiff brings state law claims of Intentional Infliction of Emotional Distress as against Defendant.

63.     Defendant owed a duty to Plaintiff to not conduct itself in its employment practices in such a manner that would cause Plaintiff to suffer injuries that were foreseeable. Defendant knew or should have known that subjecting Plaintiff to harassment, ridicule, and discriminatory practices actions, including termination would cause Plaintiff to incur emotional distress, and the same was a foreseeable consequence of their unlawful conduct.

64.     Defendant failed to perform and otherwise breached it duty owed to Plaintiff.

65.     Plaintiff's injuries were a direct and proximate cause of Defendant's failure to perform such duty to Plaintiff. Plaintiff suffered loss of sleep, stress and anxiety.

66.     As a direct and proximate result of Defendant's actions and conduct, Plaintiff has suffered and will continue to suffer mental pain, mental anguish and suffering and emotional distress.

67.     As a direct result of Defendant's wrongful acts and conduct, Plaintiff sustained damages and injuries.

68.     Defendant's conduct as described herein was intentional and oppressive, and done with a conscious disregard of Plaintiffs rights, which entitled Plaintiff to punitive damages.

## IX. COUNT FIVE
### [DAMAGES]

69.     Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

70.     Plaintiff would show the court that she has suffered actual damages for lost back wages, insurance benefits, lost future wages, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life as a direct result of Defendant's discriminatory employment practices described above.

71.     Plaintiff would further show the court that she is entitled to recover punitive damages for Defendant's discriminatory employment practices described above which were intentional and malicious acts.

72.     Plaintiff is entitled to recover her reasonable and necessary attorney's fees pursuant to 42 U.S.C. 2000e-5(k).

73.     Defendants' acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff:

a. Actual damages;

b. Pain and suffering and mental anguish

c. Loss of quality of life;

d. Where applicable, exemplary and punitive damages as well as reasonable attorneys' fees and costs of court;

e. Pursuant to 42 U.S.C. § 1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

f. Prejudgment interest; and

g. Post judgment interest.

h. Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## X. COUNT SIX
## [PUNITIVE/EXEMPLARY DAMAGES]

74.     Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

75.     Additionally, and in the alternative, the conduct of Defendant were done with malice. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiff's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff requests punitive and exemplary damages are awarded against Defendant in a sum which is within the jurisdictional limits of this court.

## XI. COSTS AND ATTORNEY FEES

76.     Plaintiff incorporate by reference all paragraphs above as if fully set forth herein.

77.     As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with the Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

78.     Plaintiff is entitled to an award of attorney fees and costs under 42 U.S. C. § 1988(b) and other applicable provisions or in equity. As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiffs prosecution of this litigation. Plaintiff seeks and pray for all reasonable and necessary attorneys' fees and costs of suit in this case which include the following: (a) Preparation and trial of this lawsuit; and (b) Post-trial, pre-appeal legal services; and (c) An appeal to the 5th Circuit Court of Appeals; and (d) An appeal to the United States Supreme Court in the event that an appeal is necessary; and (e) Post-judgment discovery and collection in the event execution on the judgment is necessary.

## XII. CONDITIONS PRECEDENT

79.     Plaintiff reserves her rights to plead and prove the damages to which she is entitled to at the time of trial. All conditions precedent to Plaintiffs recovery have been performed or have occurred.

## XIII. TRIAL BY JURY

80. Plaintiff has paid a jury fee and demands trial by jury.

## XIV. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from

Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself justly entitled.

                Respectfully Submitted,

                */s/ Kim T. Cole*
                KIM T. COLE
                Texas State Bar No. 24071024
                K. COLE LAW, PLLC
                2770 Main Street, Suite 186
                Frisco, Texas 75033
                (214) 702-2551 (phone)
                (972) 947-3834 (fax)
                kcole@kcolelaw.com